

390 North Broadway – Ste. 140 | Jericho, New York 11753
MAIN TELEPHONE: (516) 455-1500 | FACSIMILE: (631) 498-0478

DALLAS | NEW YORK | NAPLES

December 17, 2021

VIA ECF

The Honorable Diane Gujarati
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *VNUE, Inc. v. Power Up Lending Group, Ltd. et al.*, No. 2:21-cv-5545

Dear Judge Gujarati:

    Pursuant to the Court's Individual Rules, Rule III(A), Plaintiff VNUE, Inc. ("Plaintiff") hereby opposes the request by Defendants Power Up Lending Group, Ltd. and Curt Kramer (collectively, "Power Up") for a pre-motion conference, dated December 10, 2021 ("Letter").

    Now that VNUE is attempting to recoup the overpayments of stock that Power Up extracted via its unlawful contracts, Power Up asserts that Plaintiff is attempting to obtain "windfall profits." *See* Letter at 1. In point of fact, this is precisely what VNUE is *not* doing: Plaintiff *seeks only to put the parties in their pre-contractual positions*, which would allow Power Up to retain the principal amount it loaned to VNUE. This remedy would closely track the disgorgement that the SEC may seek from Power Up based on its unregistered dealer activity. *See, e.g., SEC v. Almagarby*, 2021 U.S. Dist. LEXIS 155294, at *7 (S.D. Fla. Aug. 16, 2021).

**A.    Power Up Disdains the Evolution of Jurisprudence and the Securities Market Over the Past Nine Decades.**

    Power Up cloaks its arguments in a guise of noble anti-regulatory originalism that, at its roots, would relegate the SEC to ticker-tape and gas lamps in an age of cryptocurrency and SPACs. Power Up contends that VNUE "misreads 14 words in the Exchange Act," and hence has erroneously interpreted the term "dealer." Not so. The first step in arriving at Power Up's tortured interpretation is to ignore a host of recent caselaw that is precisely on-point as to what constitutes dealer behavior. These courts have concluded that entities using Power Up's *precise business model* are indeed unregistered securities dealers (or that a claim on such grounds presents a viable claim). *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786 (11th Cir. 2015); *SEC v. Almagarby,* 479 F. Supp. 3d 1266 (S.D. Fla. 2020); *SEC v. Keener*, 2020 WL 4736205 (S.D. Fla. Aug. 14, 2020); *SEC v. Fierro*, 2020 WL 7481773 (D.N.J. Dec. 18, 2020); *SEC v. River N. Equity LLC*, 415 F. Supp. 3d 853 (N.D. Ill. 2019); *Auctus Fund, LLC, v. Players Network, Inc.*, 20-cv-10766 (D. Mass. Dec. 10, 2021).

    Although these decisions are from the last six years, they draw from jurisprudence developed over a far longer period. The underwriting activity found to be such a crucial factor in *Big Apple* and *River North* may be traced to the SEC's analysis in *In the Matter of Gordon Wesley Sodorff*, 1992 SEC

LEXIS 2190, *18 (S.E.C. September 2, 1992) (observing that "[u]nlike an investor or trader, Sodorff's profits did not result from appreciation in the value of the securities, but rather from his markup over the price he paid.").

Power Up presents an interpretation of "dealer" ascertainable only by reading 85-year old treatises with blinders on – that is, by reading them in total isolation from the multitude of amendments, developments, and modernization of the markets and the law since the passage of the Act in 1934. The advent of worldwide internet trading, a vast increase in publicly-traded companies, and increasingly complex forms of securities present ever-expanding opportunities for unfairness, manipulation and fraud which the SEC is expressly charged with preventing through administrative and judicial enforcement.

**B.  Equitable Principles Do Not Preclude Recovery.**

While equitable estoppel appears to be a recognized defense in 29(b) claims, it is a heavily fact-based determination, and none of the facts alleged suggest that estoppel is even remotely applicable. Defendants do not point to any evidence that VNUE knew that the agreements in this case were unlawful yet intentionally kept them in place "to see how [its] investment turns out before [it] decides to invoke the provisions of the Act." *Royal Air Props., Inc. v. Smith*, 312 F.2d 210, 213-14 (9th Cir. 1962). Indeed, keeping the agreements in place would seem only to cause VNUE further injury, not provide it with any benefit. Moreover, the fact that this case involves a simple loan of money distinguishes it from *Regional Props., Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552 (5th Cir. 1982). In that case, the plaintiff sought partial rescission of a contract for (already performed) brokerage services by an unlicensed broker. Unlike in this case, *Regional Properties* addressed a complicated factual circumstance where "a return of the parties to the status quo would be impossible." *Id.* at 557.

**C.  VNUE's Claims Are Not Time-Barred.**

Power Up's assertion that the claims are time-barred fails for several reasons. *First,* even if Power Up were correct that the one-year statute applies,[1] Power Up has not established the point at which Plaintiff, in its view, should have discovered the violation. Power Up contends that VNUE could easily have discovered that it was not registered through a quick search of brokercheck.finra.org. But VNUE's ability to conduct that search does not establish that VNUE should have known of Power Up's violation because *Power Up has consistently maintained — as it does even now — that it is not a dealer*. Accordingly, a reasonable plaintiff in VNUE's position would believe that Power Up was not required to register, and therefore would have had no reason to conduct a search on BrokerCheck. *See Auctus Fund*, 20-cv-10766 (D. Mass. Dec. 10, 2021), Slip Op. at 18. *See also Busher v. Barry*, 2019 U.S. Dist. LEXIS 172754, at *18-19 (S.D.N.Y. Mar. 12, 2019).

---

[1] Unlike the limitations provision addressed in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), it is unclear whether the 1-year/3-year limitations scheme would properly be applied in a non-securities-fraud case. *See Lawrence v. Richman Grp. of Conn., LLC*, 407 F. Supp. 2d 385, n.7 (D. Conn. 2005) (observing that "[a]n unregistered broker could simply wait to file suit on an illegal contract until after the expiration of the Section 78cc statute of limitations and thus preclude a defendant from raising the defense and effectively allow the broker to circumvent the federal registration requirements.").

*Celsion Corp. v. Bear Stearns Mgmt. Corp.*, 157 F. Supp. 2d 942 (N. D. Ill. 2001) is distinguishable. Unlike VNUE, the plaintiff in *Celsion* had knowingly contracted with the defendant to perform brokerage-type services, and stated expressly that it was aware that the defendant was not a registered broker at the time it was soliciting investors. *Celsion* 157 F. Supp. 2d at 948. No such allegations have been made here.

Finally, even if VNUE had been aware that Power Up is not registered, Power Up's statute of limitations argument runs into other obstacles, such as the continuing violation doctrine, which "operates to delay the triggering of a statute of limitations where a continuing violation is 'occasioned by continual unlawful acts, not continual ill effects from a single violation.'" *In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134, 155 (E.D.N.Y. 2019). Under the doctrine, as an unregistered securities dealer, Power Up effects a new violation of § 15(a) each time it transacted in the securities it obtained pursuant to the agreements; those transactions commenced approximately six months after each loan (conversions) and continued for an undetermined period of time thereafter (sale of the conversion stock).

Power Up's arguments have so little merit that its proposed motion would be futile. Accordingly, its request to file a motion to dismiss should be denied.

Sincerely,

*/s/ Gustave P. Passanante*
Gustave P. Passanante, Esq.
Catherine Gretschel, Esq.
**THE BASILE LAW FIRM P.C.**
390 North Broadway, Suite 140
Jericho, NY 11753
Tel.: (516) 455-1500
Fax: (631) 498-0748
Email: gus@thebasilelawfirm.com
cat@thebasilelawfirm.com

*Attorneys for Plaintiff VNUE, Inc.*

CC: All counsel of record (via ECF)